UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONELL COVERSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-05454-DMR<br><br>**ORDER ON PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 16 |

Plaintiff Lonell Coverson filed this employment discrimination action in state court against his employer, Pacific Gas and Electric Company and PG&E Corporation (together, "PG&E"). PG&E removed the case, asserting that this court has federal question jurisdiction because Section 301 of the Labor Management Relations Act ("LMRA") preempts Coverson's claims. Coverson now moves to remand the case to state court and for an award of attorneys' fees and costs. [Docket No. 16.] This matter is suitable for determination without oral argument. Civil L.R. 7-1(b). For the following reasons, the motion to remand is granted. The request for attorneys' fees and costs is denied.

**I.　　BACKGROUND**

　　**A.　　Factual Background**

Coverson has been employed by PG&E since 1991. [Docket No. 1-1 (Hulteng Decl., Aug. 5, 2020) ¶ 4, Ex. A (1st Am. Compl., "FAC") ¶¶ 5, 9.] He is a member of the International Brotherhood of Electrical Workers, Local 1245, and his employment has been governed by a collective bargaining agreement ("CBA") at all relevant times. [Docket No. 1-2 (Bradley Decl., Aug. 5, 2020) ¶ 4, Exs. A (CBA), B (letter agreement).]

In the operative complaint, Coverson alleges that he is an African American man who

currently is employed as a Substation Maintenance Electrician. FAC ¶ 5. He claims that PG&E deprived him of two promotional opportunities in 2019. First, he appears to allege that in April 2019, he was denied the right to bid on an open Maintenance Crew Foreman position at the Martin Service Center, even though he had the most seniority under the union contract. Coverson alleges that although there were two crews and two supervisors at that location, there was only one foreman. Instead of filling the second foreman position, which should have been awarded to Coverson based on seniority, the supervisor gave extra overtime to the individual in the first foreman position. FAC ¶¶ 18-20.

Next, Coverson alleges he was denied the opportunity to bid or make a job request for an Electrician Switchman position, which paid more than his current job. Coverson had bid on the Electrician Switchman position since 2017, but the position remained "closed" for over two years. Believing that his supervisor would not open the position, Coverson removed his bid from the system in September 2019. Less than two weeks later, his supervisor opened the position and awarded it to a less-qualified white employee. *Id*. at ¶¶ 21-23.

Coverson alleges that he "has a long history of engaging in activity protected by the FEHA," including being identified as a witness in two race discrimination cases against PG&E. *Id*. at ¶¶ 25, 26. He filed a complaint with the Department of Fair Employment and Housing ("DFEH") alleging race discrimination, retaliation, and wrongful termination on November 12, 2019. Following his complaint, Coverson experienced retaliation by his current foreman and supervisor. *Id*. at ¶¶ 29-32.

Finally, in March 2020, the San Carlos Substation Maintenance Department Crew Foreman was promoted to a management position, which created a foreman opening. Even though Coverson is the "top bidder" for the vacant foreman position, he alleges that "PG&E refuses to fill the position through its usual and customary job bidding process" in order to deprive Coverson of the promotion. Instead, it has "upgraded an electrician to Crew Foreman status on a day-to-day basis." *Id*. at ¶¶ 34, 35.

**B. Procedural History**

Coverson filed a complaint against PG&E in San Francisco Superior Court on March 11,

2020. He filed an amended complaint on June 18, 2020, alleging two claims for relief: 1) race discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), California Government Code section 12900 et seq.; and 2) retaliation in violation of FEHA. Notice of Removal ¶ 1; Hulteng Decl. ¶¶ 2, 4. PG&E removed the action on August 6, 2020, asserting that this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Coverson's claims require interpretation of the CBA and are thus completely preempted by Section 301 of the LMRA, 29 U.S.C. § 185. Notice of Removal ¶¶ 7-9.

## II.  LEGAL STANDARD

The federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A civil action brought in state court over which the federal district courts have original jurisdiction may be removed to the federal district court for the district embracing the place where the action is pending. *See* 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that in the absence of diversity jurisdiction, federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). That rule applies equally to evaluating the existence of federal questions in cases brought initially in federal court and in removed cases. *See Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 n.2 (2002). Under the "well-pleaded complaint rule," the plaintiff is the master of his or her claim, and "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. The removing defendant bears the burden of establishing that removal was proper. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

## III.  DISCUSSION

### A. Motion to Remand

Coverson moves to remand the case to California state court. He contends that neither of

his claims require interpretation of the CBA and therefore are not preempted by Section 301 of the LMRA.

Section 301(a) provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Section 301 "completely preempts any state causes of action based on alleged violations of contracts between employers and labor organizations." *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993). Usually, federal preemption is a defense that defendants cannot raise in order to remove state law cases. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019). However, section 301 "has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)). Labor claims may be subject to preemption under section 301 "even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). Thus, a state law claim is preempted "if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement." *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988)). "The plaintiff's claim is the touchstone for this analysis; the need to interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the [collective bargaining agreement] in mounting a defense." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001).

The Ninth Circuit uses a two-part analysis to determine whether a claim is preempted by section 301. First, the court inquires "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Burnside*, 491 F.3d at 1059. If the right "exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." *Id.* Second, if the right exists independently of the CBA, the court must consider whether "it is nevertheless substantially dependent on analysis of a collective-bargaining

4

agreement." *Id.* (quoting *Caterpillar*, 482 U.S. at 394). "If such dependence exists, then the claim is preempted by section 301." *Id.* at 1059-60. But if the claim can be resolved by "looking to" instead of "interpreting" the CBA, the claim is not preempted and can proceed under state law. *Id.* at 1060.

Here, PG&E does not dispute that the rights asserted by Coverson under the FEHA are rights conferred upon employees by virtue of state law. Therefore, the court focuses on the second part of the preemption analysis, namely, whether Coverson's claims are "substantially dependent on analysis of a collective-bargaining agreement." *Burnside*, 491 F.3d at 1059.

The court concludes that they are not. The Ninth Circuit has "consistently held that state law discrimination claims under the FEHA do not require courts to interpret the terms of a CBA and are therefore not preempted by § 301." *Schrader v. Noll Mfg. Co.*, 91 Fed. Appx. 553, 555 (9th Cir. 2004) (collecting cases); *see also Ramirez*, 998 F.2d at 748 ("[i]n every case in which we have considered an action brought under [California's anti-discrimination statute], we have held that it is not preempted by section 301," collecting cases). "This is true even where the CBA closely regulates the conduct that the plaintiff claims to be discriminatory." *Schrader*, 91 Fed. Appx. at 555.

For example, in *Ramirez*, the plaintiff brought a FEHA national origin discrimination claim based on allegations that her employer failed to give her preferred assignments despite her superior qualifications, failed to post job openings, failed to promote minority employees, and subjected her to other discriminatory conduct. 998 F.2d at 745. Her employment was governed by a CBA; the employer removed the case to federal court on the basis of section 301 preemption, arguing that the plaintiff sought to vindicate her rights under the CBA and that the court would have to consider the terms of that agreement in deciding her claims. *Id.* at 746, 748. The court rejected these arguments. As to the first, it found that the defendant "misapprehend[ed] the right which [the plaintiff] seeks to vindicate." The court determined that the plaintiff did not assert the "rights" to work preferred assignments or to be promoted; rather, she asserted the right under state law "to be free from employment discrimination based on her national origin." *Id.* at 748. As to the defendant's argument that the court would have to consider the CBA's terms, the court

5

explained the difference between "reference to or consideration of the terms of a collective-bargaining agreement" and interpreting terms for purposes of section 301 preemption:

> The resolution of Ramirez's action will not require the interpretation of the Bargaining Agreement. The Bargaining Agreement will likely be referred to by Ramirez and Fox to determine the terms and conditions of her employment. But her underlying cause of action is that Fox discriminated against her in applying and/or altering those terms and conditions. Although the inquiry may begin with the Bargaining Agreement, it certainly will not end there. . . .
>
> The Bargaining Agreement may be crystal clear . . . but Fox nonetheless may have ignored the Bargaining Agreement in Ramirez's case or applied it to her in a discriminatory manner. Thus, reference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms. If it were, all discrimination actions brought by unionized employees would be preempted because the starting point for every case would have to be the agreement.

*Id.* at 748-49. *See also Kobold*, 832 F.3d at 1033 ("in the context of § 301 complete preemption, the term interpret is defined narrowly—it means something more than consider, refer to, or apply." (quotation marks and citation omitted)).

In this case, PG&E argues that Coverson's FEHA claims require interpretation of the CBA's provisions because they are based on allegations that PG&E failed to promote Coverson because of his race and in retaliation for engaging in activities protected under FEHA. According to PG&E, in order to decide Coverson's claims, the court will be required to interpret the CBA's provisions regarding job bidding, promotions, and transfers, which set forth the criteria and procedures for awarding promotions. Opp'n 10.

PG&E's argument is based on a misreading of Coverson's complaint. Contrary to PG&E's assertions, Coverson alleges that he experienced discrimination and/or retaliation on two occasions when his supervisors failed to open positions in order to deny him opportunities to bid for them. On another occasion, they timed the opening of a position to coincide with Coverson's withdrawal of his bid for that position. *See* FAC ¶¶ 20, 23, 34. While the parties will likely refer to the CBA's provisions regarding the job bidding process, the inquiry "will not end there," because like the complaint in *Ramirez*, Coverson's complaint "concerns the alleged discriminatory enforcement of the terms of his CBA, not the substance of the terms themselves." *See Schrader*,

6

91 Fed. Appx. at 555.  The fact that PG&E may refer to the terms of the CBA to defend itself does not change the result, because "[a] defense based on the CBA is alone insufficient to require preemption."  *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 998 (9th Cir. 2007).  Instead, "the need to interpret the CBA must inhere in the nature of the plaintiff's claim."  *Cramer*, 255 F.3d at 691.  Coverson challenges PG&E's discriminatory or retaliatory motives in its decision to invoke or not invoke the job bidding process.  The parties will no doubt make reference to the job bidding process as outlined in the CBA, but Coverson's claims do not require interpretation of the CBA.

The cases cited by PG&E do not change this outcome.  PG&E primarily relies on *Bachilla v. Pacific Bell Telephone Company*, No. S-07-739 RRB KJM, 2007 WL 2825924 (E.D. Cal. Sept. 25, 2007).  Opp'n 11.  In *Bachilla*, three female employees sued their employer and union for sex discrimination and retaliation, among other claims.  *Id.* at *1.  They alleged that their employer discriminated against them by denying them promotions in favor of male employees with less seniority.  *Id.* at *1, 7.  The court concluded that the discrimination and retaliation claims were preempted because they were "substantially dependent on an analysis of the terms of the [plaintiffs'] CBA," as the terms of the plaintiffs' "eligibility for a promotion and/or transfer . . . are governed by the CBA."  *Id.* at *8.  *Bachilla* is distinguishable, because unlike the plaintiffs in that case, Coverson does not allege violations of the bidding or promotions process, or denials of promotions that violated seniority rules set forth in the CBA.  As noted above, he asserts that his supervisors enforced the terms of the CBA in a discriminatory manner by denying him opportunities to bid for positions.  Coverson's claims are not based upon a violation of his contractual rights under the CBA.  *See Bachilla*, 2007 WL 2825924 at *7 (noting that plaintiffs' discrimination claim alleges employer "promoted less senior male co-workers in violation of [its] policy to promote based on seniority.").

PG&E also cites *Audette v. International Longshoremen's & Warehousemen's Union*, 195 F.3d 1107 (9th Cir.1999), but it is also distinguishable.  Opp'n 9, 13.  *Audette* involved longshore workers, one of whom (Huntsman) had previously filed a lawsuit alleging the defendants engaged in sex discrimination by failing to register her as a B registered worker, which was a certain class

of longshore work. 195 F.3d at 1110. The parties entered into a settlement agreement that required the defendants to grant B registration status to Huntsman and others unless the defendants could demonstrate "non-discriminatory, legitimate business justification" for not doing so. *Id.* The defendants subsequently refused to register the plaintiffs, who then filed suit. *Id.* at 1110-11. The *Audette* plaintiffs' discrimination and retaliation claims alleged that the defendants failed to "register them as B longshore workers in retaliation for Huntsman's lawsuit and because of the presence of two women among [the] plaintiffs." The court concluded that they were not "free-standing claim[s] of discrimination"; instead, the court determined that "resolution of the discrimination and retaliation claim turns on defendants' offer of a 'legitimate nondiscriminatory reason'" for not registering the plaintiffs, an issue "requiring interpretation of the collective bargaining agreement." *Id.* at 1112-13 (noting "the settlement agreement specifically refers to CBA registration procedures"). Accordingly, the claims were preempted. *Id.*

In contrast, Coverson's FEHA claims are "free-standing claim[s]" of discrimination and retaliation and involve factual inquiries that "do[ ] not turn on the meaning of any provision" of the CBA. *See id.*

In sum, the court concludes that section 301 does not preempt Coverson's claims and removal is improper. Accordingly, the court grants Coverson's motion to remand.

**B.    Request for Attorneys' Fees**

The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Coverson requests an award of $3,500 in attorneys' fees and costs under 28 U.S.C. § 1447(c). Mot. 8, 10. He does not support his request with evidence of the actual amount of fees and costs he incurred in connection with the removal.

"Absent unusual circumstances, a court may award costs and attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 552 (9th Cir. 2018) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). "Removal is not objectively unreasonable 'solely because the removing party's arguments lack merit, or else attorney's fees

1  would always be awarded whenever remand is granted.'" *Id.* (quoting *Lussier v. Dollar Tree*
2  *Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)).

3  Although the court was unpersuaded by PG&E's arguments, it does not find that the
4  removal was objectively unreasonable. Accordingly, it declines to exercise its discretion under
5  section 1447(c) to award attorneys' fees and costs.

## IV. CONCLUSION

For the foregoing reasons, the court grants Coverson's motion to remand this matter to the Superior Court of the State of California, County of San Francisco.

**IT IS SO ORDERED.**

Dated: October 30, 2020



Donna M. Ryu
United States Magistrate Judge